UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cr-60296-BB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RICARDO VASQUEZ,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Ricardo Vasquez's Motion for Compassionate Release and Request for an Expedited Briefing Schedule, ECF No. [53] ("Motion"). The Government filed a Response in Opposition, ECF No. [59] ("Response"), to which Defendant filed an untimely Reply, ECF No. [60]. The Court has reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I.    BACKGROUND

On April 21, 2017, Defendant was sentenced to 120 months' imprisonment followed by five years' supervised release based on his conviction for possession with the intent to distribute 5 kilograms or more of cocaine, and 1 kilogram or more of heroin in violation of 21 U.S.C. § 841(b)(1)(A)(ii). ECF Nos. [37], [39], [51]. He has served 44 months of that sentence, and he is currently housed at FCI Oakdale I. ECF No. [53] at 3, 7.

On June 9, 2020, Defendant filed the instant Motion requesting that the Court enter an Order granting him compassionate release and converting the balance of his sentence to supervised

release with home confinement in light of the current coronavirus ("COVID-19") pandemic. *Id.* at 1. Specifically, Defendant represents that his pre-existing conditions, including hypertension and heart issues,[1] "put him at a serious risk for mortality[.]" *Id.* at 5-6. He also suffered a broken nose when he was a child, which required surgery and purportedly causes difficulty breathing. *Id.* at 6-7. Defendant alleges that FCI Oakdale I is "one of the hardest hit facilities in the nation, which is a recipe for disaster for individuals like Mr. Vasquez that have pre-existing conditions." *Id.* at 11-12. He seeks release to home confinement for the remainder of his sentence where he will reside with his fiancée and their two children, Aziza and Prince, in California. *Id.* at 11. The Government opposes Defendant's request for compassionate release. *See* ECF No. [59].[2]

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 2,624,000 confirmed cases and over 127,000 reported deaths as of July 2, 2020.[3] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

---

[1] Defendant's counsel represents Defendant's alleged heart murmurs and enlarged heart have not been confirmed with medical records. ECF No. [53] at 6. On June 10, 2020, Defendant filed his medical records under seal. ECF No. [55]. These records do not reflect a diagnosis or complaints related to heart murmurs or an enlarged heart.

[2] The Government maintains that the PSI makes no mention of his fiancée or of his children, Aziza and Prince. ECF No. [59] at 20. Rather, Defendant reportedly has three other children with two different mothers, and they all live in St. Croix. *Id.* In Reply, Defendant asserts that Aziza is not his biological child but Prince is his biological child. ECF No. [60] at 7-8.

[3] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated July 2, 2020).

Case No. 16-cr-60296-BB

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

## II.  DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

>defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction . . . .
>
>. . . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

>Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

Defendant's Motion requests that he be released from prison to home confinement under supervised release to serve the remainder of his sentence. His request is based on his alleged underlying medical conditions. The Government opposes, arguing that while FCI Oakdale I previously endured a large outbreak, the BOP has modified its operating procedures in order to effectively respond to the COVID-19 pandemic and that it has the capacity to properly address any outbreaks among inmates housed in federal facilities. ECF No. [59]. In this respect, it represents that 95% of the inmates at FCI Oakdale I have been tested as of June 18, 2020. *Id.* at 11. Further, it states that according to BOP records, Defendant was tested for COVID-19 and found to be negative. *Id.* at 19. Additionally, although it contends that Defendant has satisfied the exhaustion requirement, he has failed to present "extraordinary and compelling reasons" for a sentence reduction and he has failed to show that the relevant § 3553(a) factors weigh in favor of a sentence reduction. *Id.* at 15-16. Upon review and consideration, the Court agrees.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of 120 months was appropriate in this case in light of these § 3553(a) considerations. To date, Defendant has served approximately 45 months of that sentence. Moreover, aside from his medical conditions, which documentation does not support his claim that he has heart issues, Defendant has not shown further bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *2 (S.D. Fla. Apr. 29, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence."); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago."). As such, the Court concludes that a modification of Defendant's sentence is unwarranted at this time.

Additionally, with regard to the "extraordinary and compelling reasons" test, Defendant states that his "pre-existing conditions put him at a serious risk for mortality" based on CDC guidelines. ECF No. [53] at 5. CDC guidance indicates that individuals with the following health

conditions are at a higher risk of contracting severe illness due to COVID-19: people with moderate to severe asthma, people with chronic lung disease, people with diabetes, people with serious heart conditions, people with chronic kidney disease, people with severe obesity, people with chronic liver disease, people who are immunocompromised, people over the age of sixty five, and people who live in a nursing home or long-term care facility.[4] Defendant, who is in his early thirties, has not provided medical documentation or reports reflecting that any of his medical issues cannot be medically managed, that they are terminal, or that they substantially diminish his ability to provide self-care within the correctional facility environment. Nor has he demonstrated that his conditions are particularly severe or likely to further heighten his susceptibility to COVID-19.

The Court is sympathetic to Defendant's health condition and his concerns regarding COVID-19 outbreaks in prison facilities. However, the BOP website indicates that, while FCI Oakdale I did previously suffer a large outbreak, there are presently fifteen active cases involving the virus, eleven among the inmates and four among the staff.[5] Defendant does not allege that he has been exposed to any individuals with COVID-19, and in fact, he has reportedly been tested negative. ECF No. [59] at 19. Defendant also does not persuade the Court that current procedures in place or resources available at FCI Oakdale I are insufficient to protect him and other at-risk individuals. Likewise, Defendant does not allege that his health conditions are deteriorating. Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D.

---

[4] *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated June 25, 2020).

[5] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 2, 2020).

Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Therefore, Defendant has not met his burden that extraordinary and compelling reasons exist to support his request for compassionate release.[6]

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [53]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 7, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record

---

[6] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release to home confinement, the Court does not address the final consideration of whether Defendant poses a danger to the safety of others or to the community under § 3142(g).